UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

# FILED

MAY 1 2 2006

CLERK, U.S. BANKRUPTCY
ORLANDO DIVISION

In re:

CHARLES RICHARD JOHNSON, JR.,                 Case No. 6:05-bk-07768-ABB
d/b/a LAKE CABLE VIDEO,                        Chapter 7

       Debtor.
_____/

RENTRAK CORPORATION,

       Plaintiff,                            Adv. Pro. No. 6:05-ap-00219-ABB

vs.

CHARLES RICHARD JOHNSON, JR.,
d/b/a LAKE CABLE VIDEO,

       Defendant.
_____/

## MEMORANDUM OPINION

This matter came before the Court on the Complaint to Determine Dischargeability of Debt ("Complaint")[1] filed by Rentrak Corporation, the Plaintiff herein (the "Plaintiff"), against Charles Richard Johnson, Jr., d/b/a Lake Cable Video, the Defendant and Debtor herein (the "Debtor"). The Plaintiff seeks to have a debt in the amount of $54,949.04 deemed nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6). An evidentiary hearing was held on March 27, 2006 at which the Plaintiff, the Debtor, and their counsel appeared. The parties were directed to file statements setting forth calculations as to the amount they each contend is owed to the Plaintiff. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the

_____

[1] Doc. No. 31.

pleadings and evidence, hearing live testimony and argument, and being otherwise fully advised in the premises.

## **FINDINGS OF FACT**

The Debtor, as a sole proprietor doing business as Lake Cable Video and Video & More, owned and operated three video rental stores in Ohio. The Plaintiff, which is in the business of leasing prerecorded videos to independent video retail stores, was the Debtor's largest video supplier for ten years. The Plaintiff supplied videos to the Debtor pursuant to two written Rentrak Agreements executed by the parties on December 5, 1990 and April 26, 1992[2] and an Addendum executed by the Debtor on February 28, 2000 (the "Addendum") (collectively, the "Lease Agreements").[3] The Debtor personally guaranteed the Lease Agreements.

The Plaintiff assigned identification numbers to each of its customers' stores. The Debtor's stores were identified as: (i) Store 18870 located at 5440 Fulton Drive, Canton, Ohio; (ii) Store 43453 located at 7997 Hills & Dales, Massillon, Ohio; and (iii) Store 31981 located at 7257 Fulton Drive, Canton, Ohio. The Debtor offered the Plaintiff's videos to the public for lease and was required to share the rental fee revenues with the Plaintiff pursuant to the Lease Agreements.[4] The Plaintiff designated a lease term for each video. The Debtor had the option to buy a video at the end of its lease term at a price set by the Plaintiff. The Debtor had to return any videos he did not purchase. The Debtor, among other things, was required to keep the videos at his retail establishment, maintain insurance coverage on all videos, and maintain the videos in good condition.[5]

---

[2] Plaintiff's Exh. Nos. 1 and 2.
[3] Plaintiff's Exh. No. 19.
[4] In certain instances the Debtor could sell titles to the public and was required to share the sales proceeds with the Plaintiff.
[5] Plaintiff's Exh. Nos. 1 and 2 at ¶¶ 3.i., 8, and 9.

The Plaintiff's percentage of each rental fee collected was calculated on a "Pay-Per-Transaction" basis, referred to by the Plaintiff as the PPT System.[6] The Debtor's in-store computer system communicated each rental transaction to the Plaintiff using specialized software provided by the Plaintiff (referred to as the POS System) and the Plaintiff generated transaction reports.[7]   The Debtor was required to process all transactions through the POS System.  He was required to provide daily reports on all rental and sale transactions.  The Plaintiff assigned each video a unique barcode number, denoted as the "Txtno" in the transaction report.  Each rental transaction was assigned a specific transaction number.  The Plaintiff could track the exact video rented or sold, how much the customer paid, the length of the rental period, and late fees.  The Plaintiff invoiced the Debtor for its share of rental fees based upon the transaction report information and the Debtor was required to pay such invoices in a timely manner.  The leased videos and the Plaintiff's share of the rental and sales proceeds constitute property of the Plaintiff.

The Lease Agreements required the Debtor to notify the Plaintiff of the closing of a store and obtain the Plaintiff's permission to transfer any inventory to another location. The Lease Agreements set forth specific protocol for returning inventory to the Plaintiff. The Debtor was aware of and understood these requirements.  The Debtor knew the leased videos and the Plaintiff's share of the revenue proceeds generated from the rental and sale of videos were the property of the Plaintiff. The Debtor closed Store 18870 in August 1998.  He notified the Plaintiff of the closure and requested and completed a

---

[6] Plaintiff's Exh. No. 1.
[7] *See* Plaintiff's Exh. No. 3.

video transfer request pursuant to the Lease Agreements, which the Plaintiff approved. The Debtor moved the inventory from Store 18870 to Store 31981.

At some point the Debtor closed Store 43453, but did not notify the Plaintiff of its closing nor returned the inventory. The Plaintiff contacted the landlord of Store 43453 and learned the Debtor's property lease had expired and the Debtor had closed the store. The inventory of Store 43453 is unaccounted for and was never returned to the Plaintiff. The Debtor owes the Plaintiff $4,805.04 from Store 43453 (which amount includes revenue sharing proceeds of $3,466.63, lease term fees, access fees, and shipping fees as provided for by the Lease Agreement).[8]

Store 31981 was located in the Foxgrove Square shopping center and the Debtor rented the premises from Foxboro Fulton Center Limited Partnership (the "Landlord"). The Debtor also operated a tanning business at Store 31981. The last rental transaction reported to the Plaintiff for Store 31981 was dated August 31, 2000.[9] The last payment received by the Plaintiff from the Debtor for Store 31981 was on May 30, 2000. The Debtor closed Store 31981 and did not notify the Plaintiff of the closing. The Debtor had substantial inventory in Store 31981 and did not return it to the Plaintiff. The Debtor owes the Plaintiff $8,366.18 from Store 31981 (which includes revenue sharing proceeds of $6,329.08, lease term fees, access fees, and shipping fees as provide for by the Lease Agreement).[10] The Debtor also owes the Plaintiff the value of the inventory from Stores 43453 and 31981.

The Debtor gave conflicting testimony. He testified he was "tired" of the video business and stopped operating Store 31981 on August 27, 2000, leaving all of the videos

---

[8] Plaintiff's Exh. No. 6.
[9] Plaintiff's Exh. No. 4.
[10] Plaintiff's Exh. No. 8.

at the store. He later testified he moved the videos belonging to him to a storage unit and left the Plaintiff's videos at the premises. He also testified the Landlord locked him out of Store 31981 and took possession of the inventory along with the tanning beds used in his tanning business. The Debtor's testimony is not credible.

The Debtor's bank records reflect the Debtor continued to make deposits into his business account with National City Bank for Store 31981 on September 7, 14, and 18, 2000 totaling $2,365.75.[11] The Debtor spent or transferred all of the funds in the account so that the account had a zero balance on September 28, 2000. The Debtor denies the deposits related to rental fees or liquidation of the leased videos. The Debtor's only source of income was his operation of the video stores. The Debtor continued to operate Store 31981 after August 27, 2000 and the deposited funds were generated from the lease and/or liquidation of the Plaintiff's videos. The Debtor did not account for the transactions using the PPT System as he was required to do.

Only the Debtor and the Landlord's property manager, Robert G. Nieto & Associates, Inc. (the "Property Manager"), had keys to Store 31981. The Property Manager established neither it nor the Landlord locked the Debtor out of Store 31981 or removed any inventory from the premises. The Debtor was current with his monthly lease payments in August 2000 and the Landlord had no reason to take possession of the premises. The Debtor did not notify the Landlord or the Plaintiff he was vacating the premises. A neighboring store, Carousel Cards, notified the Landlord in September 2000 the Debtor had vacated the premises. The Landlord attempted to contact the Debtor after receiving such notification and changed the locks thirty days after its attempts to reach

---

[11] Plaintiff's Exh. No. 11.

the Debtor failed. Approximately 603 of the Plaintiff's videos were not returned to the Plaintiff nor accounted for by the Debtor.

The Landlord instituted a civil action against the Debtor for unpaid rent for the period beginning September 1, 2000 through the end of the lease term and was awarded a default judgment in the amount of $234,262.60.[12] The Plaintiff instituted a civil action against the Debtor and his business entities captioned <u>Rentrak Corporation v. Charles Richard Johnson, Jr., et al.</u>, Case No. 0104-04190. It obtained a judgment by default (the "Judgment") against the Debtor and his business entities on February 22, 2002 in the principal amount of $77,502.52 plus costs and fees of $3,611.65 and post-judgment interest.[13] The Judgment does not set forth specific findings as to how the principal judgment amount was calculated.

The Debtor engaged in a series of transactions during 2000 in which he transferred monies into investment and checking accounts held jointly with his ex-wife Barbara Johnson and accounts held by her individually.[14] He carried out such transfers with the intent to place his assets outside the reach of his creditors. The transfers rendered the Debtor insolvent. The Debtor, with the assistance of his ex-wife, attempted to avoid service of process in the litigation instituted by the Plaintiff and the Landlord.

The Debtor intentionally removed the videos from Stores 43453 and 31981 and disposed of them for personal gain in violation of the Lease Agreements. His removal and disposal of the videos was wrongful. He intentionally failed to remit Plaintiff's share of revenues from Stores 43453 and 31981 to the Plaintiff and wrongfully used such funds for personal gain. The Debtor took and disposed of the Plaintiff's videos and revenue

---

[12] Plaintiff's Exh. Nos. 17 and 18.
[13] Plaintiff's Exh. No. 9.
[14] Plaintiff's Exh. Nos. 12, 13, and 14.

shares with the intention to inflict willful and malicious injury upon the Plaintiff. His actions constitute conversion of the Plaintiff's 603 videos and revenue proceeds. The Plaintiff has not established the Debtor was a fiduciary or had a fiduciary duty to the Plaintiff. The Plaintiff has not established the Debtor committed embezzlement or larceny.

The Plaintiff filed its Complaint against the Debtor seeking to have the debt amount of $54,949.04, consisting of $45,153.33 for the value of the videos and $9,795.71 for the revenue sharing proceedings of Stores 43453 and 31981, deemed nondischargeable. The Debtor contends a debt of $9,772.35 for rental revenues is due to Plaintiff.[15] The charges relating to lease term fees, access fees, and shipping fees are purely contractual charges and are dischargeable. The revenue sharing proceeds for Stores 43453 and 39181 totaling $9,795.71 constitute property of the Plaintiff which was wrongfully withheld and disposed of by the Debtor. The revenue sharing proceeds debt of $9,795.71 is nondischargeable.

The Plaintiff contends the value of the inventory taken by the Plaintiff is $45,153.33 and such amount is nondischargeable. The Debtor disputes this valuation and states in his post-trial brief the Plaintiff "could purchase the used videos after six months from Plaintiff for as little as $.50 each and as much as $2.50 each." The Debtor appears to base this statement on provisions contained in the Addendum. The Debtor, however, fails to set forth a specific valuation calculation in his post-trial brief with supporting citations to the Lease Agreements.

The Addendum does not govern the valuation of the videos at issue, but relates only to minimum ordering obligations and the Debtor's liability in the event he failed to

---

[15] Debtor's Findings of Fact and Conclusions of Law at p. 2.

meet such obligations. Paragraphs 15(d) and 16(d) of the Rentrak Agreements (which
provisions are identical) govern the valuation of any unreturned leased video:

> Upon termination of this Agreement, Retailer shall within ten (10) days
> deliver to RENTRAK all cassettes leased hereunder that have not been
> validly purchased or otherwise properly disposed . . . Retailer shall pay
> the then current manufacturer's suggested retail price for any cassettes not
> returned to RENTRAK and shall pay all liabilities remaining due to
> RENTRAK within seven (7) days of termination. . . ."

Plaintiff's Exhibit Nos. 1 and 2. None of the 603 videos at issue were at the end of their
lease terms. The Plaintiff presented Exhibit No. 5 showing a valuation of $16,769.71 for
the videos from Store 43453 and Exhibit No. 7 showing a valuation of $28,383.62 for the
videos from Store 31981. These exhibits set forth a "Retail Price" for each title and list
how many copies of each title were in the Debtor's inventory in the "Net" column. The
"Extended Amount" column sets forth the total value of all copies of each title. For
example, the Plaintiff assigned the "Retail Price" of $106.34 to the title *American Beauty*
and assigned a total value of $1,595.10 for the fifteen copies of the movie in the
"Extended Amount" column.[16]

   The language "the then current manufacturer's suggested retail price for any
cassettes" contained in the Rentrak Agreements is ambiguous and undefined. The basis
of the "Retail Price" assessed for each video is not described or defined. The Plaintiff
has not established the meaning of the phrase "the then current manufacturer's suggested
retail price for any cassettes," the basis for the "Retail Price" assessments, or the
reasonableness of the "Retail Price" assessments. The "Retail Price" assessment appears
to be related to the video's "EOT Date" (the date on which the lease term terminates), but
such relationship to valuation is not explained.

---

[16] Plaintiff's Exh. No. 5.

The videos taken by the Debtor have some value. The valuations assessed by the Plaintiff in Exhibit Nos. 5 and 7 are not supported by any evidence and are unreasonable. The value of each video correlates to various factors including its age, popularity, and condition. Assessing a retail sales price for each video is inappropriate because the videos are used. Looking at the totality of the evidence presented, including the age, title, and rental history of the videos, the Court assesses a value of $10.00 to each title taken by the Debtor and not returned to the Plaintiff. The total value of the 603 videos is $6,030.00 and such amount constitutes a nondischargeable debt.

## CONCLUSIONS OF LAW

The Plaintiff challenges the dischargeability of the debt in the amount of $54,949.04 pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). The party objecting to a debtor's discharge or the dischargeability of a debt carries the burden of proof and the standard of proof is preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 291, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Fed. R. Bankr. P. 4005 (2005). Objections to discharge are to be strictly construed against the creditor and liberally in favor of the debtor. In re Hunter, 780 F.2d 1577, 1579 (11th Cir. 1986); In re Bernard, 152 B.R. 1016, 1017 (Bankr. S.D. Fla. 1993). "Any other construction would be inconsistent with the liberal spirit that has always pervaded the entire bankruptcy system." 4 COLLIER ON BANKRUPTCY ¶523.05, at 523-24 (15th ed. rev. 2005).

Section 523(a)(4) of the Bankruptcy Code provides a discharge pursuant to § 727 does not discharge any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4)(2005). The Plaintiff has not established the Debtor was in a fiduciary relationship with or owed a fiduciary duty to the

Plaintiff. The Plaintiff has not established the Debtor committed embezzlement or larceny. No grounds exist for a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(4).

Section 523(a)(6) provides a discharge pursuant to § 727 does not discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). The exception of a debt from discharge pursuant to § 523(a)(6) requires a plaintiff to establish by a preponderance of the evidence the debtor deliberately and intentionally injured the creditor or creditor's property by a willful and malicious act. In re Howard, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001). The United States Supreme Court ruled in Kawaauhau v. Geiger that in order to establish the requisite willful and malicious intent of § 523(a)(6), a plaintiff must establish the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in § 523(a)(6), nondischargeability requires conduct that inflicts an injury intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61-2, 118A S. Ct. 974, 140 L. Ed. 2d 90 (1998).

The revenue sharing proceeds for Stores 43453 and 39181 totaling $9,795.71 constitute property of the Plaintiff which was wrongfully withheld and disposed of by the Debtor. The Debtor's taking of the 603 videos and revenue proceeds in the amount of $9,795.71 constitutes conversion. In re Wolfson, 56 F.3d 52, 54 (11th Cir. 1995); Rentrak v. Forbes, 186 B.R. 764, 767 (Bankr. S.D. Fla. 1995). The Plaintiff has established the Debtor wrongfully took and disposed of the Plaintiff's 603 videos and revenue shares from Stores 43453 and 31981 with the intention to inflict willful and

malicious injury upon the Plaintiff. The Debtor's actions meet the willful and malicious standard of § 523(a)(6), as defined by the Supreme Court in <u>Geiger</u>. The revenue sharing proceeds debt of $9,795.71 is nondischargeable.

The Plaintiff's valuations of the videos are not supported by the evidence and are unreasonable. A value of $10.00 for each of the 603 videos taken by the Debtor and not returned to the Plaintiff, for a total value of $6,030.00, is proper and reasonable. The amount of $6,030.00 constitutes a nondischargeable debt.

A separate judgment in favor of the Plaintiff Rentrak Corporation in the amount $15,825.71 and against the Debtor Charles Richard Johnson, Jr., d/b/a Lake Cable Video, consistent with these Findings of Fact and Conclusions of Law shall be entered contemporaneously.

Dated this 12th day of May, 2006.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge